IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

GABRIEL LEE,

       Plaintiff,

v.                                                                                                                                            CIV 18-0243 JHR

NANCY A. BERRYHILL,
Acting Commissioner of Social Security,

       Defendant.

## **MEMORANDUM OPINION AND ORDER**

This matter comes before the Court on Plaintiff Gabriel Lee's Motion to Reverse and Remand for a Rehearing with Supporting Memorandum [Doc. 18], filed August 3, 2018. Pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73(b), the parties have consented to the undersigned Magistrate Judge to conduct dispositive proceedings in this matter and enter final judgment. [Docs. 5, 7, 8]. Having reviewed the parties' submissions, the relevant law, and the relevant portions of the Administrative Record,[1] the Court will deny Mr. Lee's Motion.

    I.      INTRODUCTION

This Court's institutional role in a social security appeal is specific and narrow. This Court must affirm the decision of the Acting Commissioner where it is shown to be supported by substantial evidence and is free from harmful legal error. Mr. Lee argues that the administrative law judge ("ALJ") who denied his claim failed to meet these deferential standards by improperly weighing his treating psychologist's opinion, failing to incorporate moderate limitations found by the Administration's non-examining physician into his residual functional capacity ("RFC"), and

---

[1] Documents 14 through 14-10 comprise the sealed Administrative Record ("*AR*"). The Court cites the Record's internal pagination, rather than CM/ECF document and page number.

declining to conduct a drug addiction and alcoholism ("DAA") assessment after concluding that Mr. Lee is not disabled despite his alcoholism. [*See* Doc. 18, p. 2]. The Court, however, finds that substantial evidence supports the ALJ's decision to only afford "some weight" to Mr. Lee's treating psychologist, and that Mr. Lee's alternative arguments for reversal are foreclosed by binding case law. Therefore, the decision of the Acting Commissioner must be affirmed.

## II.     PROCEDURAL HISTORY

Mr. Lee filed applications for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act on November 9 and 10, 2015. *AR* at 215-222. Mr. Lee alleged a disability onset date of July 21, 2014, due to Posttraumatic Stress Disorder; Major Depressive Disorder; Traumatic Brain Injury; Anxiety; Chronic Headaches; and, "painful tingling in arms and hands." *AR* at 255. The Administration denied Mr. Lee's claims initially and upon reconsideration, and he requested a *de novo* hearing before an ALJ. *AR* at 79-158.

ALJ Michael Leppala held a hearing on July 11, 2017, at which Mr. Lee and a Vocational Expert ("VE") testified. *AR* at 30-78. Thereafter, the ALJ issued an unfavorable decision on November 16, 2017. *AR* at 10-29. Mr. Lee requested review of the ALJ's decision by the Appeals Council, but on January 13, 2018, the Council denied his request for review. *AR* at 1-5. As such, the ALJ's decision became the final decision of the Commissioner. *Doyal v. Barnhart*, 331 F.3d 758, 759 (10th Cir. 2003). This Court now has jurisdiction to review the decision pursuant to 42 U.S.C. § 405(g) and 20 C.F.R. § 422.210(a).

A claimant seeking disability benefits must establish that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a

continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). The Commissioner must use a five-step sequential evaluation process to determine eligibility for benefits. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).[2]

At Step One of the sequential evaluation process, the ALJ found that Mr. Lee has not engaged in substantial gainful activity since his alleged onset date. *AR* at 16. At Step Two, he determined that Mr. Lee has the following severe impairments: affective disorder, anxiety disorder and alcohol addiction disorder. *AR* at 16. At Step Three, the ALJ concluded that Mr. Lee's impairments do not meet or medically equal the regulatory "listings." *AR* at 17-18. Mr. Lee does not challenge these findings on appeal.

When a claimant does not meet a listed impairment, the ALJ must determine his residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e). "RFC is not the *least* an individual can do despite his or her limitations or restrictions, but the *most*." SSR 96-8p, 1996 WL 374184, at *1. In this case, the ALJ determined that Mr. Lee retains the RFC to:

> perform a full range of work at all exertional levels but with the following non-exertional limitations: can understand, carry out, and remember simple instructions and make commensurate work-related decisions, respond appropriately to supervision, coworkers, and work situations, deal with routine changes in work setting, maintain concentration, persistence, and pace for up to and including two hours at a time with normal breaks throughout a normal workday. He is limited to superficial interaction with coworkers, supervisors, and the general public.

---

[2] The Tenth Circuit summarized these steps in *Allman v. Colvin*, 813 F.3d 1326, 1333 n.1 (10th Cir. 2016):

> At step one, the ALJ must determine whether a claimant presently is engaged in a substantially gainful activity. *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009). If not, the ALJ then decides whether the claimant has a medically severe impairment at step two. *Id.* If so, at step three, the ALJ determines whether the impairment is "equivalent to a condition 'listed in the appendix of the relevant disability regulation.'" *Id.* (quoting *Allen v. Barnhart*, 357 F.3d 1140, 1142 (10th Cir. 2004)). Absent a match in the listings, the ALJ must decide at step four whether the claimant's impairment prevents him from performing his past relevant work. *Id.* Even if so, the ALJ must determine at step five whether the claimant has the RFC to "perform other work in the national economy." *Id.*

*AR* at 18. Employing this RFC at Steps Four and Five, and relying on the testimony of the VE, the ALJ determined that Mr. Lee can return to his past relevant work as a line cook and dishwasher, precluding benefits at Step Four. *AR* at 22. However, the ALJ also determined that there are other jobs that exist in significant numbers in the national economy that Mr. Lee can perform, precluding benefits at Step Five. *AR* at 23. Specifically, the ALJ determined that Mr. Lee retains the capacity to work as a machine cleaner and landscape specialist. *AR* at 23. Accordingly, the ALJ found that Mr. Lee is not disabled as defined in the Social Security Act, and denied benefits. *AR* at 24.

### III. LEGAL STANDARDS

This Court "review[s] the Commissioner's decision to determine whether the factual findings are supported by substantial evidence and whether the correct legal standards were applied." *Vigil v. Colvin*, 805 F.3d 1199, 1201 (10th Cir. 2015) (quoting *Mays v. Colvin*, 739 F.3d 569, 571 (10th Cir. 2014)). "[I]n making this determination, [this Court] cannot reweigh the evidence or substitute [its] judgment for the administrative law judge's." *Smith v. Colvin*, 821 F.3d 1264, 1266 (10th Cir. 2016). The Court must exercise "common sense" when determining whether the substantial evidence standard has been met; if the Court can follow the ALJ's reasoning, the decision must stand. *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012). The standard for a decision to be supported by substantial evidence is low. "'Substantial evidence' means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Howard v. Barnhart*, 379 F.3d 945, 947 (10th Cir. 2004). "It requires more than a scintilla, but less than a preponderance." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

## IV. ANALYSIS

Mr. Lee argues that the ALJ should have given greater weight to the opinions of his treating psychologist, Gabriel Longhi, Psy.D. [Doc. 18, p. 2]. Mr. Lee also argues that the ALJ erred by improperly picking and choosing among the moderate limitations found by non-examining consultant Scott Walker, M.D. Finally, Mr. Lee argues that the ALJ was required to conduct a DAA evaluation in his case, and failed to do so. The Court disagrees.

### A. Substantial evidence supports the ALJ's decision to only give "some weight" to Dr. Longhi's opinions.

Under law, "[i]t is the ALJ's duty to give consideration to all the medical opinions in the record. . . . He must also discuss the weight he assigns to such opinions." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012) (citations omitted). Mr. Lee does not argue that the ALJ failed to comply with this requirement, only that the ALJ should have given greater weight to Dr. Longhi's opinions. The Court is not convinced.

Dr. Longhi treated Mr. Lee with psychotherapy since at least December 19, 2016. *See AR* at 1383. On July 14, 2017, Dr. Longhi completed a Medical Assessment of Ability To Do Work-Related Activities Form in support of Mr. Lee's claims. *See AR* at 1807-1810. As the ALJ summarized:

> Dr. Longhi opined that the Claimant would have moderate limitations in the following areas: understanding and remembering very short and simple instructions, maintaining attention and concentration for extended periods, performing activities within a schedule, maintaining regular attendance, being punctual, interact appropriately with the general public, maintain socially appropriate behavior, and be aware of normal hazards. Dr. Longhi opined that the Claimant would have marked limitations in the following areas: understanding and remembering detailed instructions, carrying out detailed instructions, working in coordination with others, making simple work-related decisions, completing a normal workday and workweek without interruptions from psychological based symptoms, travel in unfamiliar places, and set realistic goals or make plans independently of others. (Ex. 22F).

*AR* at 22. While the ALJ recognized that Dr. Longhi is Mr. Lee's treating physician, he gave Dr. Longhi's opinions as rendered on the form only "some weight" because:

> While the doctor completed a check-box form and did not provide an adequate explanation for the conclusions reached, I find that support in the evidence that precludes the Claimant's ability to perform detailed or complex work. Further, I find that limited social interaction is appropriate. However, medical evidence does not support the finding that the Claimant would be unable to complete a normal workday and workweek.

*AR* at 22. In other words, the ALJ considered and gave partial weight to Dr. Longhi's opinions, discounting his reliance on them for two reasons: (1) Dr. Longhi "did not provide an adequate explanation for the conclusions reached[,]" and (2) the medical evidence does not support Dr. Longhi's finding that Mr. Lee cannot complete a normal workday and workweek. *AR* at 22. The Court finds that substantial evidence supports the ALJ's reasoning.

In order to ensure that an ALJ properly evaluates a treating physician's opinions "case law, the applicable regulations, and the Commissioner's pertinent Social Security Ruling (SSR) all make clear that in evaluating the medical opinions of a claimant's treating physician, the ALJ must complete a sequential two-step inquiry, each step of which is analytically distinct." *Krauser v. Astrue*, 638 F.3d 1324, 1330 (10th Cir. 2011). First, the ALJ should determine whether the opinion is entitled to "controlling weight." *Watkins*, 350 F.3d at 1300. An ALJ is required to give the opinion of a treating physician controlling weight if it is both: (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques"; and (2) "consistent with other substantial evidence in the record." *Id.* (quotation omitted). "[I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight." *Id.*

Because the ALJ does not affirmatively state whether Dr. Longhi's opinions are entitled to controlling weight, it appears that he may have skipped the first step under the treating physician analysis and leapt directly to the second. In the past, judges in this district have held that skipping

6

the first step in the analysis constitutes reversible error. *See Wellman v. Colvin*, CIV 13-1122 KBM, Doc. 19 (D.N.M. Dec. 3, 2014). However, the Tenth Circuit has also indicated that where a reviewing court can determine that an ALJ "implicitly declined to give the opinion controlling weight" there is no ground for remand. *Mays v. Colvin*, 739 F.3d 569, 575 (10th Cir. 2014) ("Ms. Mays argues that the ALJ did not expressly state whether he had given Dr. Chorley's opinion 'controlling weight.' But the ALJ implicitly declined to give the opinion controlling weight. Because we can tell from the decision that the ALJ declined to give controlling weight to Dr. Chorley's opinion, we will not reverse on this ground."); *see also Causey v. Barnhart*, 109 F. App'x 375, 378 (10th Cir. 2004) (unpublished) ("Implicit in the ALJ's decision is a finding that Dr. Waldrop's opinion . . . is not entitled to controlling weight."); *see also Andersen v. Astrue*, 319 F. App'x 712, 721 (10th Cir. 2009) (unpublished) ("It is apparent that the ALJ concluded that these opinions were not entitled to controlling weight. Although ordinarily the ALJ should have made explicit findings to this effect . . . we are not troubled by the substance of the ALJ's determination."). Here, the ALJ's decision to ascribe Dr. Longhi's opinion "some weight" shows that he implicitly declined to give it controlling weight because he found it to be unsupported and inconsistent with other evidence in the record. Therefore, the Court hesitates to reverse the ALJ solely for failing to explicitly discuss whether Dr. Longhi's opinion was entitled to controlling weight. *See Perez v. Colvin*, CIV 15-0429 MCA-KBM, 2016 WL 8229939, at *6 (D.N.M. Oct. 12, 2016), *report and recommendation adopted*, 2016 WL 8229937 (D.N.M. Nov. 7, 2016).

However, even if a treating physician's opinion is not entitled to controlling weight, "[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527" at the second step of the ALJ's analysis. *Watkins*,

7

350 F.3d at 1300 (quoting SSR 96–2p, 1996 WL 374188, at *4). The Tenth Circuit has summarized these factors as:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Krauser*, 638 F.3d at 1331 (quoted authority omitted); *see* 20 C.F.R. §§ 404.1527(c)(1)-(6), 416.927(c)(1)-(6). An ALJ is "not required 'to apply expressly each of the six relevant factors in deciding what weight to give a medical opinion.'" *Razo v. Colvin*, 663 F. App'x 710, 715 (10th Cir. 2016) (unpublished) (quoting *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007)). Rather, an ALJ must simply provide "good reasons" for the weight assigned to the treating physician's opinion. *Id.* Only if the ALJ rejects the opinion completely, must he then give specific, legitimate reasons for doing so. *Robinson v. Barnhart*, 366 F.3d 1078, 1082 (10th Cir. 2004).

The Court finds that the ALJ met these standards in this case. The ALJ recognized that Dr. Longhi is Mr. Lee's treating physician. *See* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). However, he found the severe restrictions assessed by Dr. Longhi on the form to be unsupported, *see* 20 C.F.R. §§ 404.1527(c)(3), 416.927(c)(3), and inconsistent with the medical record. *See* 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4). Thus, the ALJ addressed three of the six regulatory factors; nothing further was required so long as those reasons were supported by substantial evidence. *See Oldham*, 509 F.3d at 1258.

Mr. Lee argues that the ALJ does not indicate *which* medical evidence contradicted Dr. Longhi's findings concerning his limitation in completing a normal workday and workweek. However, the Court can follow the ALJ's reasoning. *See Webb v. Commissioner, Social Security*

*Administration*, 750 F. App'x 718, 721 (10th Cir. 2018) (unpublished) (citing *Keyes-Zachary*, 695 F.3d at 1166). Immediately preceding the ALJ's discussion of Dr. Longhi's opinions he weighed the opinions of the non-examining state agency physicians, including Dr. Walker's. *See AR* at 21. Pertinent here, Dr. Walker opined that Mr. Lee could attend and concentrate sufficient to complete a normal workday without significant interruptions from psychologically-based symptoms. *See AR* at 91. The ALJ gave Dr. Walker's opinions "great weight" because they were "well supported by the medical evidence and generally consistent with the evidence as a whole." *AR* at 21. Thus, the ALJ discounted Dr. Longhi's opinion as to Mr. Lee's ability to complete a normal workday and workweek in favor of Dr. Walker's opinion that he had no such limitation. "The ALJ was entitled to resolve such evidentiary conflicts and did so." *Allman v. Colvin*, 813 F.3d 1326, 1333 (10th Cir. 2016). Moreover, Mr. Lee has not argued that the ALJ erred in relying on Dr. Walker's opinion. *See, e.g.*, *Tarpley v. Colvin*, 601 F. App'x 641, 644 (10th Cir. 2015) (unpublished).

"An ALJ may discount a treating physician's opinion because it is inconsistent with the weight of the evidence or assesses new restrictions without explanation or support." *Webb*, 750 F. App'x at 721 (citations omitted). Here, the ALJ permissibly discounted Dr. Longhi's opinion that Mr. Lee cannot complete a normal workday because that opinion was unsupported and inconsistent with Dr. Walker's opinion. The Court will not reverse the ALJ for his treatment of Dr. Longhi's opinion.

**B. The ALJ was not required to incorporate the moderate limitations noted by Dr. Walker into Mr. Lees' RFC.**

Mr. Lee's next argument is that the ALJ violated established case law by accepting Dr. Walker's mental RFC finding while failing to incorporate all of the moderate limitations he identified. [*See* Doc. 18, pp. 16-18]. The Court is not convinced that the ALJ erred.

9

Dr. Walker reviewed Mr. Lee's medical records and rendered an opinion as to his residual functional capacity. Specifically, Dr. Walker completed a Mental Residual Functional Capacity Assessment ("MRFCA") in the course of the Administration's denial of Mr. Lee's claims. *See AR* at 68-91. The MRFCA is a form used by the Social Security Administration, which is broken up into three sections. *See* POMS DI 24510.060. "Section I is for recording summary conclusions derived from the evidence in the file and directs that detailed explanation of the degree of limitation for each category is to be recorded in Section III." *Carver v. Colvin*, 600 F. App'x 616, 618 (10th Cir. 2015) (unpublished) (internal quotation marks omitted).[3] As has been recognized by the Tenth Circuit:

> The purpose of Section I is chiefly to have a worksheet to ensure that the psychiatrist or psychologist has considered each of these pertinent mental activities and the claimant's or beneficiary's degree of limitation.... **It is the narrative** written by the psychiatrist or psychologist **in section III ... that adjudicators are to use as the assessment of RFC.** Adjudicators must take the RFC assessment **in section III** and decide what significance the elements discussed in this RFC assessment have in terms of the person's ability to meet the demands of past work or other work.

*Nelson v. Colvin*, 655 F. App'x 626, 628–29 (10th Cir. 2016) (quoting SSA, Program Operations Manual System (POMS), DI 25020.010 B.1 (emphasis in original)). The purpose of Section III is to state, among other things, "[t]he **extent** to which the individual **can** still **perform** and **sustain** specific mental activities and mental functions." POMS DI 24510.061 (emphasis in original).

---

[3] The Court notes that Dr. Walker's MRFCA was not completed on the exact form discussed in *Carver v. Colvin*, 600 F. App'x 606 (10th Cir. 2015) (unpublished), which relied on POMS DI 24510.060. However, the form used by Dr. Walker contains the same rating system and four general categories of limitations as special Form SSA-4934-F4-SUP. Moreover, it directed Dr. Walker to discuss Plaintiff's mental capacities in narrative form. Thus, the MRFCA form is sufficiently analogous to special Form SSA-4734-F4-SUP to allow the Court to determine whether, in consideration of POMS DI 24510.060, the specific psychological limitations at issue should have been included in the RFC. *See Maldonado v. Berryhill*, CIV 16-0392 KBM, 2017 WL 2491528, at *2 n.3 (D.N.M. Apr. 26, 2017) (Molzen, M.J.) (citing *Vanvakerides v. Colvin*, CIV 14-0879 SCY, Doc. 25 at 11 (D.N.M. April 7, 2016) (Yarbrough, M.J.)).

Thus, "[i]t is the narrative written by the psychiatrist or psychologist in Section III that adjudicators are to use in the assessment of RFC." *Carver*, 600 F. App'x at 619 (citation omitted); *see also Nelson*, 655 F. App'x at 628 (citing POMS, DI 25020.010 B.1).

The Tenth Circuit has made clear that, so long as a consultant's Section III findings reflect Section I limitations, a reviewing court is to "compare the administrative law judge's findings to [the doctor's] opinion on residual functional capacity, not her notations of moderate limitations." *Smith v. Colvin*, 821 F.3d 1264, 1269 n.2 (10th Cir. 2016). In *Smith*, the plaintiff argued that the ALJ failed to include the following nonexertional (Section I) moderate impairments found by the Administration's nonexamining consultant:

- maintain concentration, persistence, and pace,
- remain attentive and keep concentration for extended periods,
- work with others without getting distracted,
- complete a normal workday and workweek without interruption for psychologically based systems,
- perform at a consistent pace without excessive rest periods,
- accept instructions and respond appropriately to criticism by supervisors,
- get along with coworkers or peers without distracting them or engaging in behavioral extremes,
- respond appropriately to changes in the workplace, and
- set realistic goals or independently plan.

*Smith*, 821 F.3d at 1268. The Tenth Circuit disagreed. It reasoned that the ALJ's RFC ("concluding that Ms. Smith (1) could not engage in face-to-face contact with the public and (2) could engage in only simple, repetitive, and routine tasks") "incorporated the functional limitations of Ms. Smith's moderate nonexertional impairments" because it was "similar" to the doctor's Section III narrative, which concluded "that Ms. Smith (1) could not engage in face-to-face contact with the public and (2) could engage in only simple, repetitive, and routine tasks." *Id.* at 1269. The Tenth Circuit explained that the Plaintiff's focus on the consultant's moderate Section I findings raised "the wrong question." *Id.* at 1269 n.2. Rather, "[a]s discussed above, [the consultant's] notations

11

of moderate limitations *served only as an aid* to her assessment of residual functional capacity." *Id.* (emphasis added).

Other judges in this District have declined to follow *Smith*, positing that Section III findings must always *explicitly* account for Section I moderate limitations, or else "the Court would have to find that *Smith* implicitly overrules *Haga* [*v. Astrue*, 482 F.3d 1205 (10th Cir. 2007),] and *Frantz* [*v. Astrue*, 509 F.3d 1299, 1304 (10th Cir. 2007)]." *See Silva v. Colvin*, 203 F. Supp. 3d 1153, 1162 (D.N.M. 2016) (Vidmar, M.J.); *Jones v. Berryhill*, 2017 WL 3052748, at *5 (D.N.M. June 15, 2017) (Fashing, M.J.). However, this Court does not believe that *Haga*, *Frantz* and *Smith* are irreconcilable. *See McDaniel v. Berryhill*, 2017 WL 3052504, at *14 (D.N.M. July 12, 2017) (Fouratt, M.J.). As Judge Fouratt explained in *McDaniel*, "[m]ore recent decisions of the Tenth Circuit have clarified the application of *Haga*[.]" *Id.* These cases, *Vigil v. Colvin*, 805 F.3d 1199, 1203-04 (10th Cir. 2015), and *Smith*, collectively stand for the proposition that "an administrative law judge can account for moderate limitations by limiting the claimant to particular kinds of work activity." *McDaniel*, 2017 WL 3052504, at *14 (quoting *Smith*, 821 F.3d at 1269). The same rationale applies to a Section III narrative that inherently accounts for moderate limitations identified in Section I. Thus, an ALJ need not "parrot" a consultant's "exact description of limitations" so long as the ALJ's RFC reflects the consultant's "overall assessment." *See Chavez v. Colvin*, 654 F. App'x 374, 375 (10th Cir. 2016) (citing *Smith*, 821 F.3d at 1268–70 & n. 2).

In this case, Dr. Walker assessed several moderate limitations in Section I of the MRFCA. *See AR* at 89-91 However, in Section III he opined that when Mr. Lee is "treatment/medication complaint and substance free" he retains the RFC to "understand, remember, and carry out simple instructions, attend and concentrate sufficient to complete a routine work day without significant interruptions from psychologically-based symptoms; exercise reasonable judgment; interact

appropriately with coworkers; supervisors and the general public on a superficial basis." *AR* at 91. As noted, the ALJ gave this finding "great weight," and his RFC determination reflects Dr. Walker's opinion. *See AR* at 18, 21. Therefore, the Court finds no reversible error in the ALJ's failure to parrot the moderate limitations identified by Dr. Walker in Section I of the MRFCA form he completed in this case. *See Smith*, 821 F.3d at 1269 ("Through these findings, the administrative law judge incorporated the functional limitations of Ms. Smith's moderate nonexertional impairments."); *Chavez*, 654 F. App'x at ("While the ALJ didn't parrot Dr. Lev's exact descriptions of Ms. Chavez's limitations, the ALJ did specifically note his overall assessment that Ms. Chavez 'retain[ed] the capacity to do simple tasks.'").

### C. The ALJ was not required to conduct a DAA evaluation in this case because he found Mr. Lee to be capable of work even considering his alcoholism.

Mr. Lee's final argument for reversal amounts to a claim that, because the ALJ found his alcohol addiction disorder to be a severe impairment, he was required to complete a full DAA evaluation as set forth in SSR 13-2p. [*See* Doc. 18, pp. 19-22]. The Court is not convinced.

The governing statutes provide that, for the purpose of defining disability, "[a]n individual shall not be considered to be disabled … if alcoholism or drug addiction would (but for this subparagraph) be a contributing factor to the Commissioner's determination that the individual is disabled." 42 U.S.C. §§ 423(d)(2)(C), 1382c(a)(3)(J). A close reading of SSR 13-2p, the regulations, and pertinent case law belie Mr. Lee's position that this statute required anything more from the ALJ in this case.

The ALJ determined that Mr. Lee is not disabled. *AR* at 24. SSR 13-2p states that when the Commissioner is adjudicating a claim "***and we determine that a claimant is disabled*** considering all of the claimant's medically determinable impairments (MDIs), we must then determine whether the claimant would continue to be disabled if he or she stopped using drugs or alcohol[.]" 2013

13

WL 621536 at *2 (emphasis added). Thus, "[u]nder the Act and our regulations, we make a DAA materiality determination *only when* … [w]e find that the claimant is disabled considering all impairments, including the DAA." *Id.* at *4 (emphasis added). The Commissioner even proffers a flow-chart to demonstrate this point. *Id.* at *5. The regulatory language supports SSR 13-2p, *see* 20 C.F.R. § 404.1535(a), 416.935(a), as does pertinent case law. *See Drapeau v. Massanari*, 255 F.3d 1211, 1214 (10th Cir. 2001) ("The implementing regulations make clear that a finding of disability is a condition precedent to an application of § 423(d)(2)(C)."); *Padilla v. Berryhill*, CV 17-0329 GJF, 2018 WL 3830930, at *15-17 (D.N.M. 2018) (Fouratt, M.J.). Thus, because the ALJ determined that Mr. Lee is not disabled even when considering his alcoholism, he was not required to complete a DAA evaluation in this case.

## V. CONCLUSION

Mr. Lee has failed to convince this Court that the Commissioner's decision to deny him benefits was tainted by legal error or unsupported by substantial evidence.

Wherefore, IT IS THEREFORE ORDERED that Plaintiff Gabriel Lee's Motion to Reverse and Remand for a Rehearing with Supporting Memorandum [Doc. 18], is DENIED and the decision of the Acting Commissioner is AFFIRMED.

_____
JERRY H. RITTER
UNITED STATES MAGISTRATE JUDGE
Presiding by Consent